# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN KRISTINE RATHGE ARBITMAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 18-cv-51 |
| | : | |
| NANCY A. BERRYHILL | : | |

## <u>MEMORANDUM</u>

SCHMEHL, J. /s/ JLS                                             MARCH 29, 2019

       On February 19, 2019, United States Magistrate Judge Lynne A. Sitarski issued a Report and Recommendation ("R & R") recommending that this Court deny Plaintiff's request for review of the final decision of the Commissioner of Social Security denying Plaintiff's request for disability insurance benefits. Plaintiff timely filed Objections to the Magistrate Judge's Report.

       Where a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in de novo review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); *see also Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. *See United v. Raddatz*, 447 U.S. 667, 676 (1980).

A district court "must uphold a final agency determination unless [it] find[s] that it is not supported by substantial evidence in the record." *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is something "more than a mere scintilla;" rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). A reviewing court must not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." (internal quotation marks omitted).

Plaintiff objects to the Magistrate Judge's conclusions that the Administrative Law Judge ("ALJ") did not err in giving little weight to the opinions of Plaintiff's primary care physician and long-time chiropractor and in crafting a residual functional capacity for Plaintiff that was not based on any contrary medical opinion or evidence.

The medical record, ALJ's findings, and statutory framework for assessing a disability claim were adequately summarized by the Magistrate Judge. Accordingly, the Court incorporates those portions of the R&R by reference into this opinion.

In response to interrogatories from Plaintiff's counsel concerning the impact of Plaintiff's back and wrist impairments on her abilities, Plaintiff's primary care physician, Peter Gross, D.O., opined that Plaintiff's back impairments limited her to standing for two hours total in an eight-hour workday, and sitting for one and a half hours in an eight-hour work day. (R. 1016). Dr. Gross further opined that Plaintiff's right-hand impairments prevented her from lifting, pushing or pulling anything over 10 pounds and precluded her from

2

"consistent movement of hand, wrist and fingers." (*Id.*). According to Dr. Gross, Plaintiff's "prognosis for improvement" was "poor-multiple protruding/herniated discs causing chronic pain." (R. 1017).

In response to interrogatories from Plaintiff's counsel, Plaintiff's chiropractor, James DeMarino, D.C., opined that Plaintiff's back impairments allowed her to stand for two hours total in an eight-hour work day, sit for one and a half hours total in an eight hour workday, and lift and carry two pounds for up to two hours in an eight-hour workday (R. 1019). In response to a question regarding Plaintiff's ability to remain at a worksite for eight hours and perform a limited range of light work, Dr. Marino stated, "[s]itting and standing are extremely limited and driving increases the lumbar radicular symptoms, so driving should be limited." (R. 1020). Dr. DeMarino opined that Plaintiff "would be off task due to pain for approximately 70% of an eight hour day." (*Id.*) He assessed her "[p]rognosis [as] poor. She will have little or no improvement over the next few years as her condition is in its chronic state." (*Id.*)

In crafting Plaintiff's residual functional capacity ("RFC"), the ALJ gave little weight to the opinions of Dr. Gross and Dr. DeMarino. Instead, the ALJ determined that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b)[1] with the following physical and mental restrictions: "sit 6 hours in an 8-hour workday; stand 6 hours in an 8-hour workday; walk 6 hours in an 8-hour workday; occasionally perform postural activities; occasionally reach, finger, and

---

[1] "Light work" is defined as a position in which the worker is not required to lift any more than 20 pounds at one time, though they may be required to frequently lift and/or carry up to 10 pounds. Additionally, light work may require frequent standing, walking, and/or pushing and pulling while seated, including positions that require the use of legs, arms, or both to push or pull levers or other mechanical devices.

3

handle with the right (dominant) hand; and limited to simple repetitive tasks with only occasional changes in the work setting." (R. 23). The ALJ further found that Plaintiff could not perform her past work as shorthand reporter which is a sedentary and skilled job because "she is restricted to simple, repetitive tasks and no more than occasional use of the right upper extremity for reaching, fingering and handling." (R. 29).

An ALJ is obligated to "accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). But, while the ALJ may not reject a treating physician's opinion outright absent contradictory medical evidence in the record, "such an opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (quoting *Plumme*r, 186 F.3d at 429); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (internal quotation marks omitted). In reviewing for substantial evidence, however, we may not reweigh the evidence or substitute our own conclusions for those of the ALJ. *Id*.

Here, the ALJ cited substantial medical evidence to support her decision to give little weight to the opinions of Dr. Gross and Dr. DeMarino. Specifically, with regard to Dr. Gross, the ALJ stated:

> The opinion of primary care physician Peter Gross, D.O. is given little weight, because it is contradicted by evidence of conservative treatment for the back and mental impairment and improvement of the hands with

4

> surgery, albeit not complete recovery (Exh. 15F). The opinion contrasts with progress notes showing "ok" in the review of the musculoskeletal, neurologic, and psychiatric systems (e.g., Exh. 14F, pp. 9, 10, 12, 13, 14, 18, 23, 25) and normal findings in these areas on many occasions (e.g., Exh. 14F, pp. 11, 12, 13, 14, 18, 23, 25). Additionally, Dr. Gross indicates that [Plaintiff] had limited range of motion in the right hand, but the treatment notes show full range of motion in the right hand (Exh. 14F, p. 59). Furthermore, greater weight is given to the opinion of the treating hand specialist [Dr. Culp,] with regard to the limits related to the right hand and wrist.

(R. 28).

The Magistrate Judge concluded there was substantial evidence to support the ALJ's decision, citing the "relatively conservative treatment" Plaintiff received for her back (chiropractic sessions and medications), the "normal physical, musculoskeletal, and neurologic examination findings" contained in Dr. Gross's progress notes and the fact that at her last appointment with Dr. Gross before her last date insured, Plaintiff denied joint and muscle pain and was in no acute distress. (ECF 10 at 21-22). The Court finds that both the ALJ and the Magistrate Judge adequately cited and explained the substantial evidence of record supporting the ALJ's conclusions.

With regard to Dr. DeMarino, the ALJ stated:

> The opinion of James DeMarino, D.C. is given little weight, because a chiropractor is not an acceptable medical source (Exh. 16F). In addition, his assessment that [Plaintiff] can stand a total of 2 hours in an 8-hour workday, sit a total of 1.5 hours in an 8-hour workday, and lift/carry 2 pounds is too extreme in light of the conservative treatment for [Plaintiff's] back and improved functioning of the hand/wrist with surgery. Furthermore, the statement that [Plaintiff] would be off-task due to pain approximately 70% of an 8-hour workday is inconsistent with evidence of conservative

5

> treatment for the back, no ongoing use of narcotic pain medication or pain injections, improvement in the hand/wrist with surgeries, and ability to drive, travel alone, read, and prepare simple meals (Exh. 3E, 5F, 8F, 14F 17F). Moreover, greater weight is given to the opinion of the treating hand specialist [Dr. Culp] with regard to limits related to a hand impairment.

(R. 28).

The Magistrate Judge concluded there was substantial medical evidence to support the ALJ's decision to afford Dr. DeMarino's opinion little weight, citing his conservative treatment of Plaintiff with spinal manipulation, the fact that Dr. DeMarino's notes contain no musculoskeletal or neurological examinations or findings, and Plaintiff's self-reported activities of daily living including preparing meals, completing household tasks, driving, shopping and going to a shooting range. (ECF 10 at 25). Again, the Court finds that both the ALJ and Magistrate Judge adequately cited and explained the substantial evidence of record supporting the ALJ's conclusions.

The Court now turns to the ALJ's assessment of Plaintiff's RFC. An RFC assessment determines "what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of [her] medically determinable impairment(s)." SSR 83-10, 1983 WL 31251, at *7. The ALJ must include all credibly established limitations in the RFC. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). Ultimately, the ALJ makes the RFC and disability determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

The ALJ provided the following summary of her reasoning in crafting Plaintiff's RFC:

In sum, the above residual functional capacity assessment is supported by the following: the opinion of Dr. Culp[2]; the claimant's acknowledgement that Soma and gabapentin take the edge off her pain; an EMG from July 2005 demonstrating bilateral lumbar radiculopathy at L2 and L4-5; an EMG in December 2008 showing evidence of a complete right dorsal ulnar cutaneous neuropathy; a CT scan of the lumbar spine in July 2009 showing a herniated disc at L5-S1 and bulging discs/spondylosis at L1-5; an EMG of the right upper extremity in approximately July 2011 indicating ulnar neuropathy at the elbow and wrist; an MRI of the right wrist in December 2011 indicating a mass proximal to Guyon's canal in the neurovascular bundle; improvement in motor strength and sensation with hand surgeries; noted improvement in range of motion and sensitivity of the right hand with physical therapy; the claimant's acknowledgement that the claimant's hand always felt better after therapy; routine and conservative treatment for the back; findings on exam that the claimant was fully oriented, alert, and in no acute distress with intact memory and concentration, normal affect, clear lungs, no adventitious breath sounds, regular heart rate and rhythm, normal gait, generally full range of motion in the spine and joints, 5/5 motor strength, generally intact sensation except some decreased sensation in the right hand, and normal reflexes; and the claimant's activities of daily living, including bathing, brushing her teeth, dressing, cutting meat, feeding herself, driving a car, shopping, doing light cleaning and laundry, going to a shooting range, and reading. (Testimony and Exh. 2F, 4F, 5F, 6F, 8F, 9F, 13F, 14F, 18F).

(R. 28-29)

---

[2] In response to interrogatories, Plaintiff's treating hand specialist, Randall Culp, M.D., opined that Plaintiff "has an impairment in the distribution of the right ulnar nerve with decrease sensation, decreased grip strength and fine motor control." (R. 1105). He assessed that she "is going to be limited to lifting and carrying of the right dominant hand for up to two hours and would be 10 lbs. She would be precluded from performing repeated hand and finger actions for fine motor movements from all periods September 2013 to present." (R. 1106).

7

The Magistrate Judge concluded there was substantial evidence in the record to support the ALJ's decision, citing in general the ALJ's explanation of "how the Plaintiff's treatment history, the objective evidence, the medical opinion evidence and Plaintiff's activities to support an RFC assessment of light work with the listed physical and mental restrictions." (ECF 10 at 27). In particular, the Magistrate Judge noted that the ALJ "provided a thorough discussion of the medical evidence and diagnostic imaging, including that Plaintiff's treatment for her back was conservative and consisted of essentially chiropractic care and a nerve block in August 2009 and that Plaintiff's neurological and musculoskeletal exams were normal." (R. 27-28). Finally, the Magistrate Judge noted that Plaintiff acknowledged in a Function Report-Adult that she could "bathe and dress herself, drive, shop with her husband carrying the bags, and do light laundry and cleaning as pain allowed." (*Id*. 28). The Magistrate Judge noted that the ALJ took these limitations into account by restricting Plaintiff to "light exertion with sitting, standing and walking up to 6 hours each and no more than occasional postural maneuvers." (*Id*.)

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ did not rely on a medical opinion in making the assessment, but instead was based on her lay interpretation of the evidence. The Commissioner contends that the ALJ formulated Plaintiff's RFC based upon consideration of the entire record and further notes that the ALJ provided evidentiary support for her assessment.

8

The district courts within the Third Circuit have wrestled with the question of whether an RFC assessment by an ALJ must be supported by medical evidence. Chief United States Magistrate Judge for the Middle District of Pennsylvania Susan E. Schwab has provided an excellent summation of the current state of the law in the Third Circuit on this issue, which we shall quote verbatim:

> We recognize the divergent views among the district courts in the Third Circuit as to whether an RFC determination must be supported by medical opinion evidence and the proper reading of *Doak v. Heckler* and its progeny in this context. *See e.g., Phillips v. Berryhill, No. 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017)*(remanding on the ground that no medical provider completed a functional assessment of plaintiff's mental health limitations and, thus, the ALJ's RFC determination was impermissibly based on his own lay opinion); *Wright v. Colvin*, 1:14-cv-2350, 2016 WL 446876, at *14 (M.D. Pa. Jan. 14, 2016)*("*Chandler* stated that an ALJ need not obtain medical opinion evidence and was not bound by any treating source medical opinion. However, both these statements are dicta. In *Chandler*, the ALJ had medical opinion evidence and there was no contrary treating source opinion. '[D]ictum, unlike holding, does not have strength of a decision 'forged from actual experience by the hammer and anvil of litigation.' The only precedential holding in *Chandler* is the unremarkable finding that an ALJ may rely on a state agency medical opinion that the claimant is not disabled when there are no medical opinions from treating sources that the claimant is disabled.")(internal citations omitted), *report and recommendation adopted*, 2016 WL 452142 (M.D. Pa. Feb. 4, 2016); *Arnold v. Colvin*, 3:12-CV-02417, 2014 WL 940205, at *4 (M.D. Pa. Mar. 11, 2014)*("We recognize that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding her activities of daily living, medical records, lay evidence and evidence of pain. However, rarely can a decision be made regarding a claimant's residual functional capacity without an

assessment from a physician regarding the functional abilities of the claimant.")(internal citation omitted); *Gormont v. Astrue*, 3:11-CV-02145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013)(citing commentators Kubitschek and Dubin: "[s]ometimes administrative law judges assert that they—and not physicians—have the right to make residual functional capacity determinations. In fact, it can reasonably be asserted that the ALJ has the right to determine whether a claimant can engage in sedentary, light, medium, or heavy work. The ALJ should not assume that physicians know the Social Security Administration's definitions of those terms. *However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor.*")(emphasis in original); *Gunder v. Astrue*, 4:11-cv-00300, 2012 WL 511936, at *15 (M.D. Pa. Feb. 15, 2012) ("Any argument from the Commissioner that his administrative law judges can set the residual functional capacity in the absence of a medical opinion of evidence must be rejected in light of *Doak.* Furthermore, any statement in Chandler which conflicts (or arguably conflicts) with *Doak* is dicta and must be disregarded."); *but see Cummings v. Colvin*, 129 F. Supp. 3d 209, 214-17 (W.D. Pa. 2015)("[R]eliance on *Doak* and the other cases cited in [Plaintiff's] brief for the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."); *Sanders v. Berryhill*, 4:16-cv-02160, slip op. at 13 (M.D. Pa. Dec. 11, 2017)("Nothing supports the contention that *Doak's* holding created a rule that a medical source's assessment of the functional abilities of the claimant must be present in the record for an ALJ to make an RFC finding.")(recommending remand, however, based on ALJ's insufficient explanation supporting his findings).

Recognizing the "undeniable medical aspect" to an RFC determination, Magistrate Judge Carlson, in *Metzger v. Berryhill,* 3:16-cv-1929, 2017 WL 1483328 (M.D. Pa. Mar. 29, 2017), *report and recommendation adopted* 2017 WL 1479426 (M.D. Pa. April 21, 2017), acknowledged the disparate paths courts have taken on the issue and reasoned:

> **These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for [an RFC] assessment typically arise in the factual setting where a medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Thus, when an ALJ is saying that a claimant can do *more* than the medical source opinion states, courts exercise caution and suggest that only rarely can an ALJ unilaterally impose an RFC on a claimant that is less restrictive than the residual functional capacity found by the medical professional. Construed in this light, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability.**
>
> **In contrast, when an ALJ is relying upon other evidence to conclude that the claimant can do *less* than a medical source opined, or when an ALJ fashions [an RFC] determination in the absence of any medical opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence.... In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's [RFC] assessment will not be set aside if it is supported by substantial evidence**.

*Metzger*, at *5 (italic emphasis in original; bold emphasis added).

> **Regardless of the approach, in a case involving the ALJ's reliance on, or departure from treating medical opinion support, or in a case involving the lack of medical opinion evidence altogether, the ALJ's RFC determination must meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (internal citations and quotations omitted).

*Rathbun v. Berryhill*, 3:17-cv-00301, 2018 WL 1514383 (M.D. Pa. March 12, 2018); report and recommendation adopted by Chief Judge Christopher C. Connor in 2018 WL 1479366 (M.D. Pa. March 27, 2018).

In concluding that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence, the Magistrate Judge did not discuss this authority, but rather appears to have relied solely on the dicta in *Chandler* that no medical opinion is necessary.

Of course, in this case, the ALJ gave little weight to the opinions of Dr. Gross and Dr. DeMarino as to Plaintiff's RFC, but then proceeded to unilaterally craft an RFC based solely on her lay interpretation of the medical evidence. Under the above-cited authority, it was incumbent upon the ALJ to obtain a medical opinion to assist her in crafting the Plaintiff's RFC. While the Court finds there was substantial evidence in the record for the ALJ to discount the opinions of Dr. Gross and Dr. DeMarino that Plaintiff was limited to standing for two hours in an eight hour work day and to sitting for one and a half hours in an eight hour work day, the Court also finds that is no medical opinion evidence in the record from which the ALJ could conclude that Plaintiff had the RFC to stand for six hours in an eight-hour work day. Six hours is quite a bit more than two hours. Not one physician opined that Plaintiff could stand for six hours. Nor is there indication from Plaintiff's activities of daily living cited by the ALJ, including bathing, brushing her teeth, dressing, cutting meat, feeding herself, driving a car, shopping, doing light cleaning and laundry, going to a shooting range and reading, that she would be able to stand for six hours in an eight-hour day. Moreover, it just so happens that six hours is the minimum amount of time a person has to be able to stand or walk in order to be found capable of performing light work. See Social Security Program Operations Manual System ("POMS") at ¶ 43 ("light work usually requires walking or standing for approximately 6 hours of the day.") Since the ALJ already found that Plaintiff could not perform sedentary work due to her hand limitations, light work was the only available option for the ALJ in order to find Plaintiff not disabled.

**Accordingly, this matter is remanded to the Commissioner with instructions to conduct a new administrative hearing, develop the record fully, and evaluate the evidence appropriately in accordance with this Memorandum.**